ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SPECTRUM CONSTRUCTION GROUP, INC., a California corporation; BISHER ALJAZZAR, an individual; CITY OF SANTA CLARITA, a public agency; CITY OF MORENO VALLEY, a public agency; STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION a public agency; GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation; DOE 1 through DOE 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR:<br>1. BREACH OF COLLECTIVE BARGAINING AGREEMENT;<br>2. FOR BREACH OF FIDUCIARY DUTY;<br>3. FOR SPECIFIC PERFORMANCE COMPELLING AN AUDIT;<br>4. FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF;<br>5. FOR ENFORCEMENT OF STOP PAYMENT NOTICE AGAINST THE CITY OF SANTA CLARITA;<br>6. FOR ENFORCEMENT OF STOP PAYMENT NOTICE AGAINST THE CITY OF MORENO VALLEY;<br>7. FOR ENFORCEMENT OF STOP PAYMENT NOTICE AGAINST THE STATE OF CALIFORNIA;<br>8. MONETARY DAMAGES THROUGH ENFORCEMENT OF PAYMENT BONDS;<br>9. RECOVERY AGAINST LICENSE BOND<br>[29 U.S.C. §§ 185, 1109, 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185; 28 U.S.C. § 1367(a); Cal. Bus. & Prof. Code §§ 7071.10, 7071.11, Cal. Civil Code §§ 8024, 9502, 9558] |

452042.1

Plaintiff, CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company, ("CLTF") alleges:

## JURISDICTION AND VENUE

1.      This action is brought by a fiduciary administrator on behalf of employee benefit plans to collect monthly fringe benefit contributions due such plans in accordance with the terms and conditions of the plans, the collective bargaining agreement between the employer and a labor organization, and pursuant to statutes (Claim 1); for breach of fiduciary duty to the plans against the employer and its principal (Claim 2);  to compel the employer to submit to a complete audit of its records (Claim 3); to compel it to submit timely paid monthly contribution reports (Claim 4); to seek recovery on stop payment notices filed with the named Cities and the State of California on public works projects for portions of the compensation in the form of contributions owed by employer to its employees payable to the plans pursuant to State Law, (Claims 5-7); to recover against payment bonds on the public works projects pursuant to State Law (Claim 8); and to recover against the employer's license bond pursuant to State Law (Claim 9)..   This Court has jurisdiction over Claims 1 through 4 pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  This Court has supplemental jurisdiction over Claims 5 through 9 pursuant to 28 U.S.C. § 1367(a) as all claims arise from a common core of transactions, and seek payment of overlapping damages. Pursuant to section 502€(2) of ERISA (codified at 29 U.S.C. § 1132€(2)), venue is proper in this district as the employer's performance and breach took place in this district and the plans are administered in this district.

/ /

-2-

452042.1

**PARTIES**

2.      CLTF is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of, the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; Southern California Partnership for Jobs Trust Fund; San Diego County Laborers' Pension Trust Fund; and San Diego Construction Advancement Trust Fund  (hereinafter referred to collectively as "TRUST FUNDS").  The TRUST FUNDS are express trusts created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the TRUST FUNDS exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  CLTF and the TRUST FUNDS' (collectively hereinafter referred to as "Plaintiff") principal places of business are in the County of Los Angeles, State of California.

3.      CLTF is a fiduciary as to the TRUST FUNDS, in that it:

        A.      Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) fringe benefit contributions to the TRUST FUNDS, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the TRUST FUNDS in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

        B.      Exercises authority or control respecting management or disposition of assets of the TRUST FUNDS, including but not limited to, receiving delinquent contributions collected and holding them in a

bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different TRUST FUNDS, different participants, different time periods and different jobs.

4.     Plaintiff is informed and believes and thereon alleges that Defendant, SPECTRUM CONSTRUCTION GROUP, INC., ("EMPLOYER"), is a California corporation organized and existing under and by virtue of the laws of the State of California and is engaged in business in the State of California with its principal place of business in the City of Irvine, County of Orange, State of California and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

5.     Plaintiff is informed and believes, and on that basis alleges, that Defendant, BISHER ALJAZZAR, an individual, ("ALJAZZAR") is and has been at all times mentioned herein, an individual who is engaged in business in the City of Irvine, County of Orange, and is a principal, the Responsible Managing Officer, Chief Executive Officer, Chief Financial Officer, and Secretary of the EMPLOYER.

6.     Plaintiff is informed and believes, and on that basis alleges that the CITY OF SANTA CLARITA, ("SANTA CLARITA") is a "Public Entity," as defined in Cal. Civ. Code § 8036, located in the County of Los Angeles, State of California.

7.     Plaintiff is informed and believes, and on that basis alleges that the CITY OF MORENO VALLEY, ("MORENO VALLEY") is a "Public Entity," as defined in Cal. Civ. Code § 8036, located in the County of Riverside, State of California.

8.     Plaintiff is informed and believes, and on that basis alleges that the DEPARTMENT OF TRANSPORTATION ("CAL TRANS") is a department of the STATE OF CALIFORNIA and is a "Public Entity," as defined in Cal. Civ.  Code § 8036, with offices located in the City of Los Angeles, County of Los Angeles, State of California.

9.     Plaintiff is informed and believes and thereupon alleges that Defendant,

452042.1

AMERICAN CONTRACTORS INDEMNITY COMPANY, ("ACIC") is a California corporation, licensed and authorized to perform and transact a surety business in the State of California, with its principal place of business in the City of Los Angeles, State of California.

10. Plaintiff is informed and believes and thereupon alleges that Defendant, GREAT AMERICAN INSURANCE COMPANY, ("GREAT AMERICAN") is an Ohio corporation, licensed and authorized to perform and transact a surety business in the State of California, with its principal place of business in the City of Cincinnati, State of Ohio.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as DOE 1 through DOE 10, inclusive are unknown to CLTF, who therefore sue said defendants by such fictitious names, and CLTF will amend this Complaint to show their true names and capacities when the same have been ascertained.

## OTHERS

12. The Southern California District Council of Laborers and its affiliated Local Unions, (collectively "UNION") is, and at all relevant times was, a labor organization representing employees affecting interstate commerce. The UNION is not a party to this action.

13. The persons listed in the attached Exhibits "1", "2", "3" and "4" are or were employees of EMPLOYER who performed general construction work on construction projects for the Cities of SANTA CLARITA, and MORENO VALLEY and for a construction project for CAL TRANS identified on said Exhibits and in the Fifth through Seventh Claims for Relief commencing with and during the periods indicated therein. Said persons listed on Exhibit "1", "2", "3", and "4" shall be hereinafter referred to as "LABORERS". Each of the LABORERS is a "laborer" within the meaning of Cal. Civ. Code § 8024. The LABORERS are not parties to this action.

452042.1

**INDIVIDUAL DEFENDANT**

14.    Plaintiff is informed and believes and thereon alleges that at all times material herein, that ALJAZZAR and DOE 1 to DOE 4 were and/or continue to be fiduciaries and/or parties in interest to the TRUST FUNDS as defined in 29 U.S.C. §§ 1002(14), and 1002(21)(A), for the reasons more fully described below and in the Second Claim for Relief.

15.    Plaintiff is informed and believes and thereon alleges that the PRINCIPALS are responsible for running the day to day operations of EMPLOYER and are responsible for decisions pertaining to the reporting and payment of contributions to the TRUST FUNDS, and that he personally maintained control of those funds which should have been turned over to the TRUST FUNDS.

16.    Plaintiff is informed and believes and thereon alleges that at all times herein, the ALJAZZAR and DOE 1 to DOE 4, inclusive are the majority shareholders of EMPLOYER and/or the beneficial owners of EMPLOYER.

17.    Plaintiff is informed and believes and thereon alleges that the ALJAZZAR acted on behalf of and in the interest of EMPLOYER in all aspects of labor relations and in EMPLOYER'S dealings and relations with the TRUST FUNDS, and the UNION.

18.    Plaintiff is informed and believes and thereon alleges that the ALJAZZAR and DOE 1 to DOE 4, inclusive acted on behalf of EMPLOYER and in the interest of EMPLOYER in determining which employees EMPLOYER would report to the TRUST FUNDS, the number of hours upon which contributions would be reported as owing, and the amount and timing of contributions to be paid to the TRUST FUNDS.

**FIRST CLAIM FOR RELIEF**

**(Against the EMPLOYER for Monetary Damages**

**Due to Employee Benefit Plans)**

19.    Plaintiff repeats and realleges and incorporates herein by reference each

452042.1

and every allegation contained in paragraphs 1 through 18, above.

## AGREEMENTS

20.     EMPLOYER became signatory to a Laborers Short Form Agreement for the Construction Industry ("SHORT FORM") with the UNION on or about September 23, 2016.  The SHORT FORM binds EMPLOYER to the UNION'S Construction Master Labor Agreements, including but not limited to the Agreement known as the Southern California Master Labor Agreement ("MLA"), and the SD Master Labor Agreement (SD MLA).

21.     Pursuant to the SHORT FORM, MLA, and SD MLA, EMPLOYER became obligated to all the terms and conditions of the various Trust Agreements which created each of the TRUST FUNDS as they may be constituted in their original form or as they may be subsequently amended.  The referenced Agreements will be collectively referred to as the "AGREEMENTS".  The AGREEMENTS obligate EMPLOYER to pay fringe benefit contributions at the rates set forth in the AGREEMENTS for each hour worked (or paid for) by employees performing services covered by the AGREEMENTS ("MONTHLY CONTRIBUTIONS").  The EMPLOYER is additionally required to submit monthly reports with these MONTHLY CONTRIBUTIONS, detailing the name, address, social security number and hours worked that month for each employee covered by the AGREEMENTS and those monthly reports are required to be submitted even where there are no employees to report for the reporting period.  The TRUST FUNDS depend on the truth and accuracy of this information, in order to not only determine the correct amount of MONTHLY CONTRIBUTIONS due, but to fulfill their own fiduciary duties to properly credit participants towards the benefits provided by the TRUST FUNDS.  Those MONTHLY CONTRIBUTIONS constitute assets of the TRUST FUNDS, pursuant to the terms of the AGREEMENTS and applicable law, from the time they are due and can be reasonably segregated from other funds.  The Trustees of the TRUST FUNDS have a

fiduciary duty to marshal those assets so that they may be applied for the benefit of the participants and beneficiaries in accordance with the various Trust Agreements.

22.     By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(C), EMPLOYER is obligated to pay to the TRUST FUNDS, as and for liquidated damages for detriment caused by the failure of EMPLOYER to pay fringe benefit MONTHLY CONTRIBUTIONS in a timely manner, a sum equal to $25.00 or twenty percent (20%) of the unpaid MONTHLY CONTRIBUTIONS or interest on the unpaid MONTHLY CONTRIBUTIONS at rates established pursuant to the AGREEMENTS from their respective due dates, whichever is the greater amount, for each of the TRUST FUNDS to which EMPLOYER is required to contribute.

23.     By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B), EMPLOYER is obligated for payment of interest on delinquent MONTHLY CONTRIBUTIONS from the due date of the contribution through the payment date of the contribution, at the per annum rate of five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California, effective on the date each contribution is due.

24.     The AGREEMENTS obligate EMPLOYER, and any of its subcontractors or lower-tiered subcontractors, to subcontract work covered under the Agreements to those subcontractors who are parties to Collective Bargaining Agreements with the UNION, and failure to do so will result in damages to the TRUST FUNDS and EMPLOYER will be financially obligated to the TRUST FUNDS for the damages caused therefrom, including amounts measured by the  MONTHLY CONTRIBUTIONS, liquidated damages, and interest that would be owed by the subcontractor if signatory to the AGREEMENT.

25.     The AGREEMENTS further provide that if EMPLOYER subcontracts work to and/or if its subcontractor(s) or lower-tiered subcontractors, subcontracts work covered under the AGREEMENTS to any subcontractor who is delinquent in its obligations to the TRUST FUNDS under its AGREEMENTS, then EMPLOYER will

-8-

be financially obligated to the TRUST FUNDS for the amounts owed by said delinquent subcontractor, including any MONTHLY CONTRIBUTIONS, liquidated damages and interest owed.

26.    The AGREEMENTS provide the TRUST FUNDS with specific authority to examine and copy all of EMPLOYER'S payroll and business records which may be pertinent to determining whether EMPLOYER has reported all hours worked (or paid for) by employees who perform services covered under the AGREEMENTS and has paid the appropriate MONTHLY CONTRIBUTIONS to the TRUST FUNDS, and that the EMPLOYER shall be responsible for the costs.

## BREACH OF AGREEMENTS

27.    Plaintiff is informed and believes and based on such information and belief alleges that EMPLOYER employed workers who performed services covered by the AGREEMENTS and failed to pay the MONTHLY CONTRIBUTIONS specified in the AGREEMENTS to TRUST FUNDS on behalf of those workers for each hour worked (or paid for) by employees performing services covered by the AGREEMENTS.  Due to EMPLOYER'S continuing obligation to submit timely accurate monthly contribution reports additional amounts may be discovered and become due and owing by EMPLOYER have not yet been ascertained at this time.  Said amounts including MONTHLY CONTRIBUTIONS, liquidated damages, subcontracting violations, interest, and audit fees will be established by proof at the trial or other hearing.

28.    All conditions to EMPLOYER'S obligations to make payments under the AGREEMENTS have been met.

## DAMAGES

29.    As a result of EMPLOYER'S failure to pay the rates specified in the AGREEMENTS, Plaintiff is informed and believes and thereupon alleges that there is now owing and unpaid to the TRUST FUNDS from EMPLOYER, during certain time

452042.1

periods from August 2019 to March 2022, damages in the sum of at least $969,363.55 consisting of $753,418.33 in unpaid MONTHLY CONTRIBUTIONS, $201,099.16 in liquidated damages, $17,988.81 in interest on the late and/or unpaid MONTHLY CONTRIBUTIONS owed to the TRUST FUNDS through May 24, 2022 plus additional accrued interest thereafter at the plan rate(s), currently 6.00% per annum, until payment of the contribution is made, less a credit of $3,142.75, plus any additional MONTHLY CONTRIBUTIONS, liquidated damages, subcontracting violations, audit fees and interest on the additional amounts owed at the plan rate(s), according to proof at the time of trial or other hearing.

30.     The failure of the EMPLOYER to pay MONTHLY CONTRIBUTIONS when due causes harm to the TRUST FUNDS and its participants, which is impractical to accurately quantify.  This may include the cost of collecting the MONTHLY CONTRIBUTIONS from the EMPLOYER or third parties (not including the costs of this litigation), the cost of special processing to restore benefit credits because of late MONTHLY CONTRIBUTIONS, the temporary loss of insurance coverage by employees (even if later restored) and medical harm to participants and beneficiaries who may have foregone medical care when notified that medical insurance ceased because of their employer's failure to pay MONTHLY CONTRIBUTIONS.  The liquidated damages provision of the AGREEMENTS was meant to compensate for this unquantifiable loss, and is based on the ratio of collection costs over amounts collected, regularly reported to the Trustees.  The Trustees of the TRUST FUNDS have the authority, in their discretion, to waive all or part of these liquidated damages.  In this case, they have exercised their discretion by declining to waive any liquidated damages.

31.     It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the AGREEMENTS which provide that in the event litigation is necessary with respect to any of the fringe benefit MONTHLY CONTRIBUTIONS and/or damages against EMPLOYER, then EMPLOYER would pay reasonable attorney's fees and all other reasonable expenses of collection, including

-10-

452042.1

audit fees.

32.     Under Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent MONTHLY CONTRIBUTIONS but also (a) for pre-judgment and post-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

## SECOND CLAIM FOR RELIEF

### Damages for Breach of Fiduciary Duties in Violation of ERISA

### (Against EMPLOYER and ALJAZZAR AND DOE 1 TO DOE 4, INCLUSIVE)

33.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 32 above.

34.     Plaintiff is informed and believes and thereon alleges that the ALJAZZAR and DOE 1 to DOE 4, inclusive were and still are parties in interest, the agents, managing officers, directors, managing employees, and/or beneficial owners of EMPLOYER with the authority to direct, control, and/or manage the business affairs of EMPLOYER including the disposition of EMPLOYER's assets.

35.     Plaintiff is informed and believes and thereon allege that EMPLOYER, and the ALJAZZAR and DOE 1 to DOE 4, inclusive were and still are fiduciaries with respect to the TRUST FUNDS within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control respecting management or disposition of assets of the TRUST FUNDS.

36.     The AGREEMENTS require that EMPLOYER deduct monthly VACATION CONTRIBUTIONS ("VACATION") due to the CONSTRUCTION LABORERS VACATION TRUST FUND FOR SOUTHERN CALIFORNIA ("VACATION FUND") from EMPLOYER'S employees' weekly paychecks, in the

452042.1

amounts specified.  Such deductions are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which thus become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."

37.    On "public works" as defined by California Labor Code § 1720, the EMPLOYER was required to pay a minimum "prevailing" or "per diem" wage, including amounts which could either be paid directly on the weekly paycheck to employees, or contributed as "employer payments" (as defined in Labor Code § 1773.1) which includes payments to the TRUST FUNDS.  The EMPLOYER employed workers on such public works for  SANTA CLARITA, MORENO VALLEY, CAL TRANS and/or other public agencies ("PUBLIC AGENCIES")  covered by the AGREEMENTS, and Plaintiff is informed and thereupon believes that EMPLOYER'S certified payroll records on the projects for each of the PUBLIC AGENCIES (pursuant to Labor Code § 1776) certified the amounts being paid and withheld from the employees' required prevailing wage, of which the benefit portion was required to be contributed to the TRUST FUNDS in satisfaction of the prevailing wage required law. The U.S. Department of Labor has taken the position that such amounts are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."

38.    Plaintiff is informed and believes that, instead of turning over the portions of the prevailing wage for contributions payable to the TRUST FUNDS, the EMPLOYER deducted from the employees' weekly paychecks the contributions earmarked for payment to the TRUST FUNDS, that the EMPLOYER and/or ALJAZZAR and DOE 1 to DOE 4, inclusive kept those amounts for their own use, and did not segregate or turn them over to the TRUST FUNDS.

39.     Plaintiff is informed and believes that the ALJAZZAR and DOE 1 to DOE 4, inclusive are the persons responsible for having the certified payroll records prepared, issuing the certified payroll reports to public agencies under Labor Code § 1776, and are responsible for the certification that such amounts would be paid to the employees for wages and the benefit portion of those wages to the TRUST FUNDS as part of the prevailing wage obligation.  Plaintiff is further informed and believes that ALJAZZAR and DOE 1 to DOE 4, inclusive had discretionary authority or control over sufficient, segregable funds to pay the amounts certified under penalty of perjury, that would be withheld from employees' weekly wages for contribution to the TRUST FUNDS in order to meet prevailing wage obligations, including the authority to write checks on the accounts in which such funds were held, but instead kept them for his own use, or for the use of the EMPLOYER.

40.     By their discretionary authority or control over the management or disposition of assets of the TRUST FUNDS, specifically to VACATION benefits as well as the fringe benefit component of prevailing wages on public works, described above, EMPLOYER and the ALJAZZAR and DOE 1 to DOE 4, inclusive are fiduciaries of the TRUST FUNDS within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

41.     The amount of the delinquent MONTHLY CONTRIBUTIONS, including VACATION referenced herein above were and still are due and owing to the TRUST FUNDS and are assets of the TRUST FUNDS within the meaning 29 U.S.C. §§ 1001-1003, 1021-1031, 1111-1114 and 18 U.S.C. § 664.  The amounts are included in the damages claimed in the First Claim for Relief, and the amounts and will be proven at the time of trial or other hearing, plus interest at the plan rate(s), including any additional amounts that may be discovered to be owed by EMPLOYER and ALJAZZAR AND DOE 1 to DOE 4, inclusive.

42.     By failing to timely account for and turn over the assets of the TRUST FUNDS described above, by failing to apply such assets for the exclusive benefit of

-13-

452042.1

participants and beneficiaries of the TRUST FUNDS, and instead using those assets for their own benefit, EMPLOYER and the ALJAZZAR and DOE 1 to DOE 4, inclusive breached their fiduciary duties to the TRUST FUNDS within the meaning of sections 404(a)(1)(A), (B) and (D), of ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

43.     Plaintiff is informed and believes and thereon alleges that the acts and omissions to act by EMPLOYER and the ALJAZZAR and DOE 1 to DOE 4, inclusive constitute misuse, misappropriation and/or conversion from employee benefit plans within the meaning of 18 U.S.C. § 664 and breach of their fiduciary obligations within the meaning of 29 U.S.C. § 1104 through § 1106.

44.     Pursuant to § 409 of ERISA, 29 U.S.C. § 1109, EMPLOYER, ALJAZZAR and DOE 1 to DOE 4, inclusive, are personally liable for damages to the TRUST FUNDS, and to make good to the TRUST FUNDS any losses to them resulting from each such breach of their fiduciary duties, and to restore to the TRUST FUNDS any profits which have been made through their use of these assets of the TRUST FUNDS.  Plaintiff seeks an accounting from EMPLOYER and the ALJAZZAR and DOE 1 to DOE 4, inclusive of the amount and disposition of these assets.

45.     Plaintiff requests that it be awarded its costs and reasonable attorney's fees pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), and such other remedies as may be available pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

### THIRD CLAIM FOR RELIEF
### OBLIGATION TO PRODUCE RECORDS FOR AUDIT
### (AGAINST EMPLOYER AND ALJAZZAR AND DOE 1 TO DOE 4, INCLUSIVE)

46.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 45 above as if fully set forth here.

-14-

452042.1

47.     Plaintiff's claim herein is for specific performance of the AGREEMENTS.

48.     Pursuant to the AGREEMENTS and 29 U.S.C. § 1059(a)(1), the TRUST FUNDS have specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported and paid contributions on all hours worked by (or paid for) their employees who perform work covered under the AGREEMENTS, and whether they have otherwise abided by the payment obligations of the AGREEMENTS.  The AGREEMENTS further provide that employers, including the EMPLOYER, shall pay the TRUST FUNDS' attorney's fees if legal action is necessary to compel the audit, and audit fees to complete the audit of EMPLOYER'S records and the TRUST FUNDS have delegated the authority to perform such audits to Plaintiff.

49.     Plaintiff has requested access to EMPLOYER's payroll and business records for the purpose of conducting an audit; however, EMPLOYER has failed and/or refused to allow the TRUST FUNDS an audit of all payroll and business records. Plaintiff seeks an audit of EMPLOYER's records on all projects from January 1, 2019 to the date of the audit.

50.     The TRUST FUNDS have no adequate or speedy remedy at law in that EMPLOYER refuses to comply with the production of all payroll and business records necessary to complete the audit.  Plaintiff therefore respectfully requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER, ALJAZZAR and DOE 1 to DOE 4, inclusive to comply with EMPLOYER's obligation under the AGREEMENTS and ERISA to fully produce EMPLOYER's books and records in order for Plaintiff to complete an audit to determine if additional amounts are due.

51.     Upon completion of the audit sought herein, Plaintiff will seek recovery of any delinquent contributions found due, as well as liquidated damages, audit costs, other damages, interest in addition to attorneys' fees and costs as provided for by AGREEMENTS and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. §

-15-

1132(g)(1) and/or (g)(2)).

## FOURTH CLAIM FOR RELIEF

**FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**
**(AGAINST EMPLOYER AND ALJAZZAR AND DOE 1 TO DOE 4,**
**INCLUSIVE)**

52.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 51, inclusive as though fully set forth herein.

53.    As part of its obligations under the AGREEMENTS, EMPLOYER is required to submit monthly reports to the TRUST FUNDS indicating the names, social security numbers and number of hours worked by each laborer it employed. EMPLOYER is required to pay to the TRUST FUNDS, at the time the report is submitted, an amount equal to the total number of laborers hours worked (or paid for), multiplied by the applicable MONTHLY CONTRIBUTION rates.

54.    EMPLOYER has failed to comply with the provisions of the AGREEMENTS as follows:  during time periods from July 2021 to March 2022 EMPLOYER has submitted its MONTHLY CONTRIBUTION report without any payment of the amounts owed as required by the AGREEMENTS and EMPLOYER's April 2022 has not yet been submitted and was due no later than May 20, 2022. EMPLOYER also failed to comply with an audit with all records necessary to conclude the audit and based upon the limited records produced, all hours worked by employees were not reported nor were contributions paid on their behalf.

55.    By reason of the actions by EMPLOYER, ALJAZZAR and DOE 1 to DOE 4, inclusive, the TRUST FUNDS have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury and damage in that employee beneficiaries of the TRUST FUNDS acquire eligibility for health and welfare

-16-

benefits and pension benefits by tabulating the number of hours reported by EMPLOYER and all contributing employers during each monthly period.  The funds necessary to pay all anticipated health and welfare claims and pension claims based upon the number of hours reported to the TRUST FUNDS on behalf of individual employees.  In addition, the amount of benefits payable to all employees for health and welfare and pension claims is actuarially determined on the basis of funds projected to be received from contributing employers.  The failure of EMPLOYER to timely submit monthly report forms without the required payments necessarily contributes to the total potential liability of the TRUST FUNDS for health and welfare and pension claims without the TRUST FUNDS being able to readjust or recompute benefit levels based upon EMPLOYER's failure to pay MONTHLY CONTRIBUTIONS on a monthly basis.  Further, EMPLOYER's failure to timely pay MONTHLY CONTRIBUTIONS causes substantial expense to the TRUST FUNDS in processing late reports without funds, processing late paid reports, adjusting employee credits and in seeking payment from EMPLOYER and/or from third parties and projects for payment.

56.    Sections 502(a)(3) and 502(g)(2)(E) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E), specifically authorizes this Court to enter injunctive relief for such violations of the plan and ERISA.  Injunctive relief is appropriate here to require the EMPLOYER to fulfill its obligations under the AGREEMENTS and ERISA.

57.    It has been necessary for Plaintiff to engage counsel to bring this action to compel compliance with the AGREEMENTS provide that in the event litigation is necessary with respect to any of the MONTHLY CONTRIBUTIONS and/or damages, EMPLOYER would pay reasonable attorneys' fees and all other reasonable expenses of collection, including audit fees.

/ / /

/ / /

/ / /

/ / /

-17-

## FIFTH CLAIM FOR RELIEF

### ENFORCEMENT OF STOP PAYMENT NOTICE

### (Against EMPLOYER AND SANTA CLARITA)

58.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 51 above.

59.     Plaintiff is informed and believes and thereupon alleges that SANTA CLARITA entered into contracts with EMPLOYER for the construction or repair upon works of improvement for SANTA CLARITA on the project known as "Central Park Build Out #19, 763225-27150, Bouquet Canyon Road, Santa Clarita, CA 91350 ("SANTA CLARITA PROJECT").

60.     Pursuant to those contract(s) and subcontract(s), LABORERS performed actual labor in the construction of the works of improvement upon the SANTA CLARITA PROJECT described herein above, expending numerous hours for which EMPLOYER promised and agreed to pay wages and MONTHLY CONTRIBUTIONS to and on behalf of its employees, including LABORERS listed on Exhibit "1", for work performed on the SANTA CLARITA PROJECT.

61.     The PROJECT is a "public works" as defined in Cal. Labor Code § 1720 and work performed on it is performed pursuant to a "public works contract" as defined in Cal. Civ. Code § 8038.  Pursuant to Cal. Labor Code § 1771, the "general prevailing rate of per diem wages" must be paid to all workers employed on the PROJECT.  The work of the LABORERS of EMPLOYER on the SANTA CLARITA PROJECT is covered by the EMPLOYER'S AGREEMENTS described above.

62.     CLTF is authorized to file a stop payment notice pursuant to Cal. Civ. Code §§ 8024 and 9100 on behalf of the TRUST FUNDS and LABORERS, as having standing under applicable law to maintain a direct action for the MONTHLY CONTRIBUTIONS.  As a "laborer" defined in Civil Code § 8024, CLTF, the TRUST FUNDS and LABORERS are not subject to the requirement to give a preliminary 20-

452042.1

day notice under Cal. Civ. Code § 9300.

63.     On or about April 29, 2022, TRUST FUNDS timely served a Stop Payment Notice on SANTA CLARITA as provided by Cal. Civ. Code §§, 9352, 9354, 9356, requesting SANTA CLARITA to withhold funds in the sums stated in the Stop Payment Notice for compensation owed and payable to the TRUST FUNDS, on behalf of LABORERS who performed work on the PROJECT for which EMPLOYER failed to pay and which is due and owing to the TRUST FUNDS in the sum of $25,261.49 in unpaid MONTHLY CONTRIBUTIONS plus interest of $157.82 through May 15, 2022, covering the period from January 2022 to March 2022 ("SANTA CLARITA STOP NOTICE").  A copy of the SANTA CLARITA STOP NOTICE is attached as Exhibit "1".

64.     Plaintiff is informed and believes and thereupon alleges that the SANTA CLARITA has not recorded a notice of completion on the SANTA CLARITA PROJECT; therefore, the TRUST FUNDS' claim and this lawsuit is timely filed

65.     Plaintiff is informed and believes and thereupon alleges that pursuant to Civil Code § 9358, SANTA CLARITA has withheld funds from EMPLOYER pursuant to the SANTA CLARITA STOP NOTICE.

66.     Plaintiff brings this cause of action under Cal. Civ Code § 9502 to recover the funds required to have been withheld by SANTA CLARITA on the SANTA CLARITA PROJECT pursuant to the SANTA CLARITA STOP NOTICE, plus interest thereon to the extent provided for by the AGREEMENTS and other law, including but not limited to Cal. Labor Code § 218.6 and  Cal. Civ Code § 3287.

## SIXTH CLAIM FOR RELIEF
### ENFORCEMENT OF STOP PAYMENT NOTICE
### (Against EMPLOYER  AND MORENO VALLEY)

67.     Plaintiff repeats and realleges and incorporates herein by reference each

-19-

and every allegation contained in paragraphs 1 through 51 above.

68.   Plaintiff is informed and believes and thereupon alleges that MORENO VALLEY entered into contracts with EMPLOYER for the construction or repair upon two works of improvement as follows:

    a.   For a project known as "Citywide Pavement Rehabilitation #21-613159, FY2021 ("PAVEMENT PROJECT"); and

    b.   For a project known as: SR-60/MORENO BEACH DRIVE INTERCHANGE (PHASE 2) ("SR-60 PROJECT").

69.   Pursuant to those contracts between MORENO VALLEY and EMPLOYER for the PAVEMENT PROJECT and SD-60 PROJECT for MORENO VALLEY (collectively MORENO PROJECTS") , LABORERS performed actual labor in the construction of the works of improvement upon the MORENO PROJECTS described herein above, expending numerous hours for which EMPLOYER promised and agreed to pay wages and MONTHLY CONTRIBUTIONS to and on behalf of its employees, including LABORERS listed on Exhibit "2", for work performed on the PAVEMENT PROJECT and Exhibit "3" for work performed on the SR-60 PROJECT.

70.   The MORENO PROJECTS are "public works" as defined in Cal. Labor Code § 1720 and construction work performed on it is performed pursuant to a "public works contract" as defined in Cal. Civ. Code § 8038.  Pursuant to Cal. Labor Code § 1771, the "general prevailing rate of per diem wages" must be paid to all workers employed on the MORENO PROJECTS performing construction work.  The work of the LABORERS of EMPLOYER on the MORENO PROJECTS is covered by the EMPLOYER'S AGREEMENTS described above.

71.   CLTF is authorized to file a stop payment notice pursuant to Cal. Civ Code §§ 8024 and 9100 on behalf of the TRUST FUNDS and LABORERS on the MORENO PROJECTS as having standing under applicable law to maintain a direct action for the MONTHLY CONTRIBUTIONS.  As a "laborer" defined in Civil Code § 8024, CLTF, the TRUST FUNDS and LABORERS are not subject to the requirement to give a

preliminary 20-day notice under Cal. Civ Code § 9300.

72.     On or about April 29, 2022, TRUST FUNDS timely served a Stop Payment Notice on MORENO VALLEY as provided by Cal. Civ Code §§, 9352, 9354, 9356, requesting the MORENO VALLEY to withhold funds in the sums stated in the Stop Payment Notice for compensation owed and payable to the TRUST FUNDS, on behalf of LABORERS who performed construction work on the PAVEMENT PROJECT for which EMPLOYER failed to pay and which is due and owing to the TRUST FUNDS in the sum of $43,559.91 in MONTHY CONTRIBUTIONS plus $643.53  in  interest to May 15, 2022 covering the period from October 7, 2021 to March 30, 2022 ("PAVEMENT STOP NOTICE").  A copy of the PAVEMENT STOP NOTICE is attached as Exhibit "2".

73.     On or about May 3, 2022, TRUST FUNDS timely served a Stop Payment Notice on MORENO VALLEY as provided by Cal. Civ Code §§, 9352, 9354, 9356, requesting the MORENO VALLEY to withhold funds in the sums stated in the Stop Payment Notice for compensation owed and payable to the TRUST FUNDS, on behalf of LABORERS who performed work on the SR-60 PROJECT for which EMPLOYER failed to pay and which is due and owing to the TRUST FUNDS in the sum of $144,366.08  in MONTHY CONTRIBUTIONS plus $2,124.68 in interest to May 15, 2022 covering the period from September 1, 2021 to March 30, 2022 ("SR-60 STOP NOTICE").  A copy of the SR-60 STOP NOTICE is attached as Exhibit "3".

74.     Plaintiff is informed and believes and thereupon alleges that pursuant to Civil Code § 9358, MORENO VALLEY has withheld funds from EMPLOYER pursuant to the SR-60 STOP NOTICE.

75.     Plaintiff is informed and believes and thereupon alleges that MORENO VALLEY has not recorded a notice of completion on the SR-60 PROJECT; therefore, the TRUST FUNDS' claim and this lawsuit are timely filed.

76.     Plaintiff brings this cause of action under Cal. Civ Code § 9502 to recover the funds required to have been withheld by the MORENO VALLEY on the (1)

PAVEMENT PROJECT pursuant to the PAVEMENT STOP NOTICE and on the (2) SR-60 PROJECT pursuant to the SR-60 STOP NOTICE, plus interest thereon to the extent provided for by the AGREEMENTS and other law, including but not limited to Labor Code § 218.6 and Cal. Civ Code § 3287.

## SEVENTH CLAIM FOR RELIEF
### ENFORCEMENT OF STOP PAYMENT NOTICE
### (Against EMPLOYER AND CAL TRANS)

77.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 51 above.

78.     Plaintiff is informed and believes and thereupon alleges that CAL TRANS entered into contracts with EMPLOYER for the construction or repair upon works of improvement for the STATE OF CALIFORNIA on the project known as "Bridge Rail Upgrade in Santa Barbara County near Buellton from 0.1 mile South of Nojoqui Creek Bridge to 0.3 Mile South of Santa Rosa Road 2SB 0101 0559 0562" ("CAL TRANS PROJECT").

79.     Pursuant to the contract, LABORERS performed actual labor in the construction of the works of improvement upon the CAL TRANS PROJECT described herein above, expending numerous hours for which EMPLOYER promised and agreed to pay wages and MONTHLY CONTRIBUTIONS to and on behalf of its employees, including LABORERS listed on Exhibit "4", for work performed on the CAL TRANS PROJECT.

80.     The CAL TRANS PROJECT is a "public works" as defined in Cal. Labor Code § 1720 and work performed on it is performed pursuant to a "public works contract" as defined in Cal. Civ. Code § 8038.  Pursuant to Cal. Labor Code § 1771, the "general prevailing rate of per diem wages" must be paid to all workers employed on the PROJECT.  The work of the LABORERS of EMPLOYER on the CAL TRANS

452042.1

PROJECT is covered by the EMPLOYER'S AGREEMENTS described above.

81.    CLTF is authorized to file a stop payment notice pursuant to Cal. Civ Code §§ 8024 and 9100 on behalf of the TRUST FUNDS and LABORERS, as having standing under applicable law to maintain a direct action for the MONTHLY CONTRIBUTIONS.  As a "laborer" defined in Civil Code § 8024, CLTF, the TRUST FUNDS and LABORERS are not subject to the requirement to give a preliminary 20-day notice under Cal. Civ Code § 9300.

82.    On or about May 20, 2022, TRUST FUNDS timely served a Stop Payment Notice on CAL TRANS as provided by Cal. Civ Code §§, 9352, 9354, 9356, requesting the CAL TRANS to withhold funds in the sums stated in the Stop Payment Notice for compensation owed and payable to the TRUST FUNDS, on behalf of LABORERS who performed work on the CAL TRANS PROJECT for which EMPLOYER failed to pay and which is due and owing to the TRUST FUNDS in the sum of $9,380.230 including interest of $260.99 projected to  May 30, 2022 covering the period of September 2021. ("CAL TRANS STOP NOTICE").

83.    Plaintiff is informed and believes and thereupon alleges that CAL TRANS has not recorded a notice of completion on the CAL TRANS PROJECT; therefore, the TRUST FUNDS' claim and this lawsuit is timely filed

84.    Plaintiff is informed and believes and thereupon alleges that pursuant to Civil Code § 9358, CAL TRANS has withheld funds from EMPLOYER pursuant to the CAL TRANS STOP NOTICE.

85.    Plaintiff brings this cause of action under Cal. Civ Code § 9502 to recover the funds required to have been withheld by CAL TRANS on the CAL TRANS PROJECT pursuant to the CAL TRANS STOP NOTICE, plus interest thereon to the extent provided for by the AGREEMENTS and other law, including but not limited to Cal. Labor Code § 218.6 and Cal. Civ. Code § 3287.

/ / /

/ / /

452042.1

## EIGHTH CLAIM FOR RELIEF

### ENFORCEMENT OF PAYMENT BOND

### [Against EMPLOYER and GREAT AMERICAN and DOE 5 TO DOE 10]

86.     Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 51, and 58 through 85, above as if fully set forth herein.

87.     Pursuant to Cal. Civ. Code § 9550, Plaintiff is informed and believes and based thereon allege that labor and material payment bonds were issued on the SANTA CLARITA PROJECT, the PAVEMENT PROJECT, the SR-60 PROJECT and the CAL TRANS PROJECT as follows:

a.   Plaintiff is informed and believes that GREAT AMERICAN issued a labor and material payment bond to EMPLOYER on the CAL TRANS PROJECT referenced in paragraph 77 above, including bond number 3340191 ("CAL TRANS BOND") naming EMPLOYER as the principal and CAL TRANS as the obligee ("PAYMENT BOND".)

b.   Plaintiff is informed and believes that a labor and material payment bond was issued to EMPLOYER on the SANTA CLARITA PROJECT, the PAVEMENT PROJECT, and the SR-60 PROJECT ("PROJECT BONDS") and or on other projects that may be discovered, by a sureties registered and authorized to transact business in the State of California, and named herein as DOE 5 to DOE 10 ("SURETIES")

88.     The LABORERS listed on Exhibits "1" to "4" are persons described in Cal. Civ. Code §§ 8024 and 9100 to whom the CAL TRANS BOND (Exhibit 4) and the PROJECT BONDS (Exhibits "1", "2" and "3") inure to the benefit of, as required by Cal. Civ. Code § 9554(c).  The TRUST FUNDS are entitled to seek that portion of the compensation of the LABORERS to be paid in the form of MONTHLY CONTRIBUTIONS, and thus, persons described in Cal. Civ. Code §§ 8024 and 9100,

452042.1

to whom the CAL TRANS BOND, and PROJECT BONDS inure to the benefit of, as required by Cal. Civ. Code § 9554(c).

89.     Although TRUST FUNDS are not required to file a preliminary notice, on or about May 20, 2022, TRUST FUNDS timely served on GREAT AMERICAN, EMPLOYER, a claim on the CAL TRANS BOND identified as Bond No. 3340191 relating to work performed by the LABORERS on the CAL TRANS PROJECT.

90.     The claim by the TRUST FUNDS on the CAL TRANS BOND covers the month of September 2021 and now totals the sum of $9,380.23 in unpaid compensation in the form of MONTHLY CONTRIBUTIONS, plus interest in the sum of $260.99 in interest to May 30, 2022  and additional amounts that may be discovered according to to proof at the time of trial and/or other hearing, plus additional accrued interest at the greater of the TRUST FUNDS' plan rate(s) currently 6.00% per annum or pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287.

91.     The claims by the TRUST FUNDS on the PROJECT BONDS for the SANTA CLARITA PROJECT, the PAVEMENT PROJECT and the MORENO PROJECTS against the SURETIES are as follows:

    a.  For the SANTA CLARITA PROJECT in the sum of $25,261.49 in unpaid compensation in the form of MONTHLY CONTRIBUTIONS, plus interest in the sum of $157.82 through May 15, 2022, plus additional amounts that may be discovered as owed, plus additional accrued interest at the greater of the TRUST FUNDS' plan rate(s) currently 6.00% per annum or pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287.

    b.  For the PAVEMENT PROJECT in the sum of $43,559.91 in unpaid compensation in the form of MONTHLY CONTRIBUTIONS, plus interest in the sum of $643.53 through May 15, 2022, and additional amounts that may be discovered and subject to proof at the time of trial and/or other hearing plus additional accrued interest at the greater of the

-25-

TRUST FUNDS' plan rate(s) currently 6.00% per annum or pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287.

    c.   For the SR-60 PROJECT in the sum of $144,366.08 in unpaid compensation in the form of MONTHLY CONTRIBUTIONS, plus interest in the sum of $2,214.68 through May 15, 2022, plus interest in the sum of $643.53 through May 15, 2022, and additional amounts that may be discovered and subject to proof at the time of trial and/or other hearing plus additional accrued interest at the greater of the TRUST FUNDS' plan rate(s) currently 6.00% per annum or pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287.

92.    Plaintiff is informed and believes and thereupon alleges that additional compensation in the form of MONTHLY CONTRIBUTIONS, plus interest thereon at the legal rate may be due, owing and unpaid by EMPLOYER to the TRUST FUNDS on behalf of the LABORERS on the CAL TRANS PROJECT and/or the SANTA CLARITA PROJECT, and/or the PAVEMENT PROJECT and/or the SR-60 PROJECT and those amounts will be claimed against the respective payment bonds on each of the projects, including the CAL TRANS BOND on the CAL TRANS PROJECT and PROJECT BONDS for each of the other projects listed and will be established by proof at the time of trial or other hearing.

93.    Plaintiff brings this action to enforce the claim against the CAL TRANS BOND pursuant to Cal. Civ. Code §§ 8024, 9100, 9558 as well as against the PROJECT BONDS.

94.    Pursuant to Cal. Civ. Code §§ 9554 and 9564, the TRUST FUNDS are entitled to their attorney's fees and costs in bringing this action to recover their claim against the CAL TRANS BOND and PROJECT BONDS. In addition, TRUST FUNDS are entitled to recover 30 days extra compensation, at the contribution rates for LABORERS on the CAL TRANS PROJECT and SANTA CLARITA PROJECT, PAVEMENT PROJECT, SR-60 PROJECT as a penalty under Cal. Labor Code § 203.5.

452042.1

## NINTH CLAIM FOR RELIEF

### (Against AMERICAN CONTRACTORS INDEMNITY COMPANY
### for Monetary Damages Through Enforcement of License Bond)

95.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 51 above as if fully set forth herein.

96.     Pursuant to various provisions of the California Business and Professions Code, including Business and Professions Code § 7071.5, EMPLOYER obtained from Defendant, ACIC, bond number 100462998  ("License Bond") and filed the License Bond with the Registrar of the California State Contractors License Board in the penal sum as required by statute and in favor of the State of California.

97.     TRUST FUNDS, as assignee of the various laborers' claims for recovery of the benefit portion of their wages, falls within the class or classes of claimants as set forth in California Business and Professions Code §§ 7071.5, 7071.11 and Civil Code § 8024(b), and is a beneficiary of the License Bond.

98.     The TRUST FUNDS are "Laborers" under California Civil Code ("Civil Code") § 8024(b).  As such, they are beneficiaries of the License Bond under California Business and Professions Code ("Business and Professions Code") §§ 7071.5(e), and 7071.11

99.     Plaintiff timely submitted a claim to SURETEC against the License Bond issued to EMPLOYER for Monthly Contributions.

100.    Pursuant to the terms of the LICENSE BOND, and provisions of California Business and Professions Code, SURETEC is responsible for paying up to the penal sum of said License Bond or at least $4,000.00 to the TRUST FUNDS for the unpaid Monthly Contributions owed on behalf of EMPLOYER's employees.

101.    The Agreements and ERISA provide for recovery of TRUST FUNDS' costs and attorney's fees; therefore, TRUST FUNDS are informed and believe that SURETEC is also responsible for payment of attorney's fees and costs incurred by the

-27-

452042.1

TRUST FUNDS.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

## **FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF**

1.      For the sum of $753,418.33, or according to proof, for delinquent fringe benefit MONTHLY CONTRIBUTIONS pursuant to the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(A);

2.      Interest on the delinquent MONTHLY CONTRIBUTIONS, in the amount of $17,988.81 through May 24, 2022 plus additional accrued interest at the plan rate(s) and subject to proof, as required by the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B),

3.      For liquidated damages in the sum of $201,099.16, or as subject to proof, as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(C);

4.      For $972,506.30 based upon the above less a credit of $3,142.75 for a total claim of $969,363.55 plus additional amounts for MONTHLY CONTRIBUTIONS, liquidated damages, subcontracting violations, audit fees and interest at the plan rate(s) according to proof at the time of trial or other hearing.

5.      For reasonable attorney fees and costs of suit as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(D);

6.      For Plaintiff's costs of audit subject to proof, in accordance with the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(E);

7.      For such other and further relief as the Court deems proper.

## **FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF**

1.      For unpaid MONTHLY CONTRIBUTIONS, interest at the plan rate(s) and damages according to proof, owed by EMPLOYER and an accounting of all assets

452042.1

of the TRUST FUNDS which have not been turned over to the TRUST FUNDS, and any profits derived by EMPLOYER and/or ALJAZZAR and DOE 1 through DOE 4 therefrom;

2.      For personal liability of EMPLOYER and ALJAZZAR and DOE 1 to DOE 4, inclusive for their breaches of fiduciary duty, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a);

3.      For reasonable attorneys' fees and costs of suit pursuant to the 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1); and

4.      For such other and further relief as the Court deems proper and just, pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

## FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF

1.      For the issuance of injunctive relief pursuant to the AGREEMENTS and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, including ALJAZZAR, DOE 1 through DOE 4, its agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the EMPLOYER's records from January 2019, and  to fully cooperate with Plaintiff with respect to the audit in order for Plaintiff to determine the total amount due to the TRUST FUNDS by the EMPLOYER, and, specifically, to produce to Plaintiff the following payroll and business records – and any other records determined by Plaintiff to be necessary to conduct a full audit – for inspection, examination and copying:

1.1.      EMPLOYER's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors and the employees of the EMPLOYER's subcontractors and lower-tier subcontractors, including but not

limited to payroll journals, employee earnings records, certified payroll records on each project requiring certified payroll be completed; payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the EMPLOYER, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the EMPLOYER, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

1.2.   EMPLOYER's job files for each contract, project or job on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the EMPLOYER and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the EMPLOYER's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors

452042.1

performed work;

    1.3.   EMPLOYER's records related to cash receipts, including but not limited to the EMPLOYER's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

    1.4.   EMPLOYER's bank statements, including but not limited to those for all checking, savings and investment accounts;

    1.5.   EMPLOYER's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

    1.6.   All collective bargaining agreements between the EMPLOYER and any trade union, and all records of contributions by the EMPLOYER to any trade union trust fund; and

2.    For costs of audit as required by the Agreements;

3.    For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

4.    For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

## **FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF**

1.    That this Court issue the following preliminary and permanent prohibitory and mandatory injunctions against EMPLOYER, and its managing officers, including

452042.1

ALJAZZAR, DOE 1 to DOE 4, inclusive, its agents, managing employees, successors, assigns, and all those in active concert or participation with EMPLOYER:

    1.1.    That EMPLOYER be ordered to deliver the following, or cause to be delivered, to the TRUST FUNDS' offices no later than 4:30 p.m., on the 20th day of each month for the duration of the AGREEMENTS:

    1.2.    A complete, truthful and accurate "Employers Monthly Report to Trustees" covering all employees which EMPLOYER employed who were covered by the AGREEMENTS commencing with EMPLOYER'S April 2020 report;

    1.3.    An affidavit or declaration from a responsible officer of EMPLOYER and/or ALJAZZAR attesting from his or her own personal knowledge under pain of perjury to the completeness, truthfulness and accuracy of the Employers Monthly Report to the Trustees; and

    1.4.    A cashier's check made payable to the Construction Laborers Trust Funds for Southern California for the full amount of the MONTHLY CONTRIBUTIONS due on Employers Monthly Reports for each account for which a report is to be submitted.

2.    For reasonable attorney's fees;

3.    For costs of suit herein; and

4.    For such other and further relief as the Court deems proper and just.

## FOR PLAINTIFF'S FIFTH CLAIM FOR RELIEF

1.  For payment of the funds withheld by the SANTA CLARITA pursuant to the SANTA CLARITA STOP NOTICE directly to the TRUST FUNDS rather than EMPLOYER or any other claimant, in the sum of $25,261.49, and $157.82  in interest

452042.1

through May 15, 2022 plus additional interest pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287 or the TRUST FUNDS' plan rate(s), whichever is greatest;

2. For costs of suit; and

3. For such further relief that the Court deems just and equitable.

## FOR PLAINTIFF'S SIXTH CLAIM FOR RELIEF

1. For payment of the funds withheld by the MORENO VALLEY pursuant to the PAVEMENT STOP NOTICE directly to the TRUST FUNDS rather than EMPLOYER or any other claimant, in the sum of $43,559.91 plus interest of $643.53 through May 15, 2022, plus additional interest pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287 or the TRUST FUNDS' plan rate(s), whichever is greatest;

2. For payment of the funds withheld by the MORENO VALLEY pursuant to the SR-60 STOP NOTICE directly to the TRUST FUNDS rather than EMPLOYER or any other claimant, in the sum of 144,366.08 plus interest of $2,124.68  through May 15, 2022, plus additional interest pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287 or the TRUST FUNDS' plan rate(s), whichever is greatest;

3. For costs of suit; and

4. For such further relief that the Court deems just and equitable

## FOR PLAINTIFF'S SEVENTH CLAIM FOR RELIEF

1. For payment of the funds withheld by the CAL TRANS pursuant to the CAL TRANS STOP NOTICE directly to the TRUST FUNDS rather than EMPLOYER or any other claimant, in the sum of $9,380.23 plus $260.99 in interest through May 30, 2022, plus additional interest pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287 or the TRUST FUNDS' plan rate(s), whichever is greatest;

2. For costs of suit; and

452042.1

3.  For such further relief that the Court deems just and equitable

**FOR PLAINTIFF'S EIGHTH CLAIM FOR RELIEF**

1.      For recovery against EMPLOYER and GREAT AMERICAN on the CAL TRANS BOND pursuant to Cal. Civ. Code §§ 9550, 9554 & 9564; Cal. Civ. Proc. Code §§ 996.410, 996.430 and 996.440;

2.      For the sum of $9,380.23 in unpaid compensation in the form of MONTHLY CONTRIBUTIONS and $2,124.68 in interest guaranteed by the CAL TRANS BOND to May 30, 2022,  plus additional accrued interested thereafter pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287 or the TRUST FUNDS' plan rate(s), whichever is greater, plus any additional amounts discovered to be owed by EMPLOYER on the CAL TRANS PROJECT including accrued interest, that may be determined at the time of trial or other hearing;

3.      For reasonable attorney fees and costs, pursuant to including California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154. from the CAL TRANS BOND on the CAL TRANS PROJECT;

4.      For 30 days extra compensation, at the contribution rates for LABORERS on the CAL TRANS PROJECT as a penalty under Cal. Labor Code § 203.5;

5.      For recovery against the SURETIES on the PAYMENT BONDS for the claims asserted on the SANTA CLARITA PROJECT, the PAVEMENT PROJECT and the SR-60 PROJECT, plus additional accrued interest thereafter pursuant to Cal. Labor Code § 218.6, Cal. Civ. Code § 3287 or the TRUST FUNDS' plan rate(s), whichever is greater, plus any additional amounts discovered to be owed by EMPLOYER, as well as attorney's fees and costs;

6.      For such other and further relief that the Court deems just and proper.

/ / /

452042.1

## FOR PLAINTIFF'S NINTH CLAIM FOR RELIEF

1.      For up to the penal sum of the LICENSE BOND from ACIC or for at least $4,000.00 plus interest at the rate or rates required by law, including Cal. Labor Code § 218.6, from the respective days the Monthly Contributions, providing the basis for the claim, became due.

2.      For reasonable attorneys' fees and costs.

3.      For such other relief that this Court deems appropriate.

REICH, ADELL & CVITAN
A Professional Law Corporation

DATED:  May 24, 2022

By:  /s/ Marsha M.  Hamasaki
         MARSHA M. HAMASAKI
         Attorneys for Plaintiff

-35-

452042.1